## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**R.B. and S.R.B., ON BEHALF OF
THEMSELVES, AND AS PAR-
ENTS/GUARDIANS/NEXT FRIENDS
OF C.B.**

    *Plaintiffs*,

**v.**                                    **Case No.  SA-20-CV-01441-JKP**

**NORTH EAST ISD,**

    *Defendant*.

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court upon this appeal from an administrative decision by the Texas Educa-tion Agency (TEA) is Plaintiffs' Motion for Partial Summary Judgment and Defendant North East Independent School District's (NEISD) Response. *ECF Nos. 28,51,54*. Also before the Court is NEISD's Motion for Summary Judgment and Plaintiffs' Response. *ECF Nos. 29,52,53*. After considering the administrative record and the arguments of the parties presented in these competing Motions for Summary Judgment, the Court GRANTS in part and DENIES in part NEISD's Motion for Summary Judgment. The Court DENIES Plaintiffs' Motion for Partial Summary Judgment. In so doing, the Court AFFIRMS the Decision of the Hearing Officer in all respects finding NEISD violated its Child Find obligations to C.B. by failing to timely identify and evaluate her as a student who may need special education services. In addition, the C.B. Plaintiffs failed to present a preponderance of the evidence to support a finding that C.B. had a disability which required special education services, and for this reason failed to show NEISD

denied C.B. a free and appropriate public education.  In addition, the Court GRANTS NEISD's Motion for Summary Judgment on the C.B. Plaintiffs' causes of action asserted under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act and GRANTS NEISD's Motion for Summary Judgment on the C.B. Plaintiffs' request for attorneys' fees.

## UNDISPUTED FACTUAL BACKGROUND

Plaintiff C.B. is currently a 12th grade student whose parents have resided within NEISD's boundaries since her Kindergarten year. C.B. received programming as a gifted and talented student from elementary education through middle school and enrolled in multiple advanced placement classes in high school.

Beginning in 2012, her second-grade year, C.B. began to receive the care of a psychiatrist who prescribed medication for Attention Deficit Hyperactivity Disorder (ADHD). C.B. performed well academically throughout her elementary education, had no disciplinary incidences or disciplinary issues, and received good scores on her STAAR testing. C.B.'s parents discussed her ADHD diagnosis with her teachers at the beginning of every school year through the present time. Communications dating from 2016 between C.B.'s parents and NEISD personnel reflect this discussion and C.B.'s related organizational difficulties, forgetfulness, and need for reminders to turn in schoolwork.

C.B. began to experience difficulties in middle school, at which time her psychiatrist diagnosed her with Generalized Anxiety Disorder. C.B. maintained her high academic proficiencies during middle school. At the start of the spring semester of her ninth-grade year (2019), C.B. experienced increasing anxiety, which increased through the spring semester and began to manifest during the school day. In March 2019, C.B.'s psychiatrist adjusted her ADHD and anxiety

medications, and the school nurse began assisting C.B. with administration of her anxiety medication as needed. The C.B. Plaintiffs discussed C.B.'s experiences of increased anxiety with her academic counselor in April 2019. The counselor gave C.B. a "yellow pass" to allow her to leave class as needed to see the school counselor. C.B. maintained her high academic performance and proficiencies during her Ninth Grade year and scored in the 96th percentile on the PSAT.

During the summer of 2019, C.B. began outpatient therapy with a new therapist due to self-injurious behavior and increased panic attacks. The therapist diagnosed C.B. with Major Depressive Disorder, in addition to Generalized Anxiety disorder, and ADHD. In the fall semester of C.B.'s tenth-grade year (2019), C.B held a rigorous academic schedule, which included all AP and Pre-AP courses. In August 2019, shortly after the beginning of her tenth-grade year, C.B.'s parents placed her in Clarity Child Guidance Center (Clarity) when C.B. reported having self-injurious thoughts and suicidal ideation. At Clarity, C.B. received therapy services during the day and returned home at night. The C.B. Plaintiffs informed C.B.'s school counselor of this placement and C.B.'s parents worked with the counselor to collect schoolwork and adjust her workload with her teachers. C.B. was discharged from Clarity on September 25, 2019, and she returned to school. C.B. continued to maintain her high academic performance and proficiencies, although her grades did begin to slip. On October 23, 2019, NEISD notified C.B.'s parents she was failing Pre-AP Algebra due to a missed exam, and C.B. was given credit protection to complete missed work.

In November 2019, the C.B. Plaintiffs, in collaboration with her therapists, determined C.B. needed a higher level of care to address anxiety and depression. C.B. entered Pacific Quest, a residential treatment facility in Hilo, Hawaii on November 30, 2019, and she officially withdrew from school on December 2, 2019. At Pacific Quest, C.B. received behavioral health care,

not academic education. C.B.'s treatment was based upon an extensive evaluation, diagnosis, and recommendation conducted by Dr. Kasenchak in December 2019 ("the Evaluation"). *See ECF No. 21-3, pp. 392-411; ECF No. 28, exh. 1, p. 13.* The Evaluation recommended continued residential placement in a therapeutic school setting to build on recent treatment gains and build skills to strengthen overall sense of self, learn self-regulation and impulse management, and develop more adaptive coping strategies when reintroduced to an academic environment. The Evaluation recommended C.B. would benefit from working with a Learning Specialist, Educational Therapist, or Executive Functioning Coach to improve organizational skills related to ADHD. The Evaluation also recommended an academic environment with a low teacher to student ratio to give C.B. more individualized attention and create accountability. The Evaluation did not recommend a Section 504 plan or special education services, as it was not conducted for this purpose or with this focus.

C.B. left Pacific Quest on February 26, 2020 and entered La Europa Academy the following day. La Europa is a residential treatment facility in Utah with an academic curriculum. C.B. resided at La Europa through April 2021. Upon returning home, C.B. received private instruction until June 2021. The record does not reflect C.B.'s academic placement from June 2021 to the present.

**PROCEDURAL BACKGROUND**

C.B.'s parents filed a Request for Special Education Due Process Hearing on April 2, 2020. *ECF No. 21-3; ECF No. 28-3, exh. 3, p. 1.* This case arises as an appeal from this administrative proceeding conducted under the Individuals with Disabilities Education Act ("IDEA") by a Special Education Hearing Officer (the Hearing Officer). In the administrative proceeding,

4

Plaintiffs (hereinafter "the C.B. Plaintiffs") presented four issues: (1)  CHILD FIND: Whether NEISD failed to timely and comprehensively identify and evaluate C.B. as a potential candidate for special education and related services; (2) FAPE: Whether NEISD denied C.B. a free and appropriate public education (FAPE) by failing to find her eligible for special education and related services and by failing to propose and implement an Individualized Education Program (IEP) reasonably calculated to provide a FAPE; (3) PROCEDURAL: Whether the District violated the C.B. Plaintiffs' procedural rights; and (4) NON-IDEA CLAIMS: Whether NEISD violated C.B.'s rights under Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act (ADA). *ECF No. 21-3, pp. 1-40; ECF No. 28-3, exh. 3, p. 5.* As relief, the C.B. Plaintiffs sought an order from the Hearing Officer directing NEISD to find C.B. eligible for special education and related services and to develop an appropriate IEP, a finding that NEISD was unwilling or unable to provide appropriate services, and an order directing NEISD to reimburse C.B.'s parents for her private placement, including reimbursement for past private services and future private placement. *ECF No. 21-3 pp. 5-7.*

The Hearing Officer found for the C.B. Plaintiffs on Issue (1), concluding NEISD violated its Child Find duty to C.B. However, the Hearing Officer found against the C.B. Plaintiffs on Issue (2), concluding the preponderance of the evidence did not establish C.B.'s eligibility for special education services at that time. With regard to Issue (3), the Hearing Officer found NEISD satisfied its procedural notice requirements under the IDEA. Finally, on Issue (4), the Hearing Officer dismissed the ADA and Section 504 claims for lack of jurisdiction. *ECF No. 21-3 pp. 32-34*.

Finding for the C.B. Plaintiffs on Issue (1), the Hearing Officer determined NEISD violated its Child Find duty to C.B. Specifically, the Hearing Officer determined NEISD's obliga-

tion to identify C.B. as a student requiring evaluation was triggered in December 2019 when C.B. entered residential treatment at Pacific Quest. *Id. at pp. 26-27*. The Hearing Officer concluded NEISD's reliance upon C.B.'s academic success, alone, as reason to refrain from evaluation for special education services was erroneous. As appropriate relief to remedy the Child Find violation, the Hearing Officer ordered NEISD to arrange for an Independent Education Evaluation (IEE) of C.B. for special education and related services at its expense and in her current setting of private placement. *Id. at pp. 32-34*. Upon completion of the Independent Education Evaluation, the Hearing Officer ordered NEISD to convene an Admission, Review, and Dismissal (ARD) Committee meeting to determine whether C.B. is eligible for special education and related services under the IDEA, and if so, to develop an Individual Education Plan (IEP). *Id.*

After exhaustion of administrative remedies, the C.B. Plaintiffs appealed the decision of the Hearing Officer by filing suit in this Court against NEISD. *ECF No. 1*. In this action, the C.B. Plaintiffs ambiguously seek reversal of the Hearing Officer's decision "in all respects where it is contrary to fact and law." *Id. at p. 20*. Construing the Complaint broadly, the C.B. Plaintiffs assert two causes of action based upon alleged errors committed by the Hearing Officer. *Id. at pp. 20-22*. The first cause of action is based upon the Hearing Officer's finding on the second issue presented, the FAPE issue. Specifically, the C.B. Plaintiffs allege the Hearing Officer erred by finding the C.B. Plaintiffs did not present a preponderance of the evidence to show C.B. was eligible for special education services. *Id. at pp. 20-21*. The C.B. Plaintiffs request this Court find NEISD denied C.B. a FAPE by failing to evaluate, and thereby find, C.B. eligible for special education and related services.[1] *Id.*

---

[1]  Within this cause of action, the C.B. Plaintiffs assert for the first time that NEISD violated Texas Education Code Chapter 29 and Texas Administrative Code Chapter 89. In addition, the C.B. Plaintiffs allege NEISD failed to comply with the Hearing Officer's Order to complete a timely IEE, a timely ARD meeting, and a timely determination of C.B.'s eligibility for special education services. This Court will not address either of these new arguments raised

For the same reasons and based upon the same factual allegations as the IDEA cause of action, the C.B. Plaintiffs assert a second cause of action based upon NEISD's violation of the ADA and Section 504 of the Rehabilitation Act. *ECF No. 1, pp. 21-22.* The C.B. Plaintiffs seek approximately $175,000 in compensatory damages stemming from the alleged ADA and Section 504 violations. *Id.*

Finally, the C.B. Plaintiffs seek attorneys' fees and recoverable costs related to the administrative proceedings and this litigation. *Id. at p. 24.* The C.B. Plaintiffs argue that, although they appeal an adverse administrative decision, they prevailed in part at the administrative level because the Hearing Officer concluded NEISD violated the IDEA by failing to timely evaluate C.B. for special education services and ordered NEISD to pay for an Independent Educational Evaluation (IEE) and to convene an Admission, Review, and Dismissal (ARD) Committee meeting. *Id.*

In response, NEISD filed a Counterclaim seeking reversal of the Hearing Officer's finding that NEISD violated its Child Find obligations by failing to timely identify C.B. as a student to be evaluated to determine eligibility for special education services. *ECF No. 8.*

This Court has before it the administrative record. The parties filed these cross Motions for Summary Judgment to appeal the Hearing Officer's Decision. The C.B. Plaintiffs appeal the Hearing Officer's ruling under the IDEA, only, arguing this Court should overturn the Hearing Officer's conclusion and find C.B. is a qualified individual with a disability eligible for special education services. *ECF No. 28.* The C.B. Plaintiffs seek to proceed to a jury trial on their causes of action asserted under the ADA and Section 504. *Id.* NEISD appeals the Hearing Officer's rul-

---

for the first time because the C.B. Plaintiffs failed to present them to the Hearing Officer and fail to present any argument pertaining to violation of these statutes. *See T. B. by & through Bell v. N.W. Indep. Sch. Dist.,* 980 F.3d 1047, 1052 (5th Cir. 2020). In addition, the scope of this Court's review does not encompass objections or argument pertaining to the issue whether NEISD timely complied with the Hearing Officer's Order. Those complaints should have been presented to the Hearing Officer.

ing under the IDEA, seeking reversal of the Hearing Officer's finding that NEISD violated its Child Find obligation by failing to identify C.B. as a student needing evaluation for special education services. *ECF No. 28.* NEISD also seeks summary judgment on the C.B. Plaintiffs' ADA and Section 504 causes of action. *Id.*

Because the IDEA cause of action arises within the procedural context of an administrative appeal, the Court will analyze this cause first, and then analyze the ADA and Section 504 causes of action as originating in this federal court.

## DISCUSSION

### I.   IDEA ADMINISTRATIVE APPEAL

#### A.  Standards of Review

##### 1.   Appeal From Administrative Proceeding Decision

Any party aggrieved by the findings and decision of an administrative hearing officer has the right bring a civil action in a federal court, limited to the issues presented in the complaint within the administrative proceeding. 20 U.S.C. § 1415(i)(2). Upon an administrative appeal under the IDEA, the assigned court presides over the appeal and "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The district court must give due weight to the Hearing Officer's findings and conclusions and make a determination upon this *de novo* review. *Pace v. Bogalusa City Sch. Bd.,* 403 F.3d 272, 289 (5th Cir. 2005); *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. by Barry F.*, 118 F.3d 245, 252 (5th Cir. 1997). In an appeal of a Hearing Officer's Decision, the party challenging the administrative decision bears the burden of

persuasion. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005); *Zamora v. Hays Consol. Indep. Sch. Dist.*, No. 1:19-CV-1087-SH, 2021 WL 2531011, at *6 (W.D. Tex. June 20, 2021).

Nevertheless, this preponderance-of-the-evidence standard is not "an invitation to the courts to substitute their own notion of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982); *Wood v. Katy Indep. Sch. Dist.*, 163 F. Supp. 3d 396, 402–04 (S.D. Tex. 2015). In reaching this decision, "courts must be careful to avoid imposing their view of preferable educational methods upon the States." *Rowley*, 458 U.S. at 207. State and local authorities have primary responsibility for educating children, and "courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* at 207–08 & n.30.

### 2. Summary Judgment as a Vehicle of Review of Administrative Decision

Although the matter is an appeal from an administrative hearing, a "suit" must be filed in federal court, and the case proceeds within the context of a civil suit pursuant to the Federal Rules of Civil Procedure. However, as an appeal, the parties are exempt from the initial disclosure and Scheduling Order requirements. Fed. R. Civ. P. 16(b), 26(a)(1)(B); W. D. Tex. Civ. R. 16(b). Consequently, the parties typically present the appellate arguments and any allowed additional evidence within the vehicle of a Motion for Summary Judgment.

When addressing a summary judgment motion in the context of an appeal from a Hearing Officer's Decision, the motion "is simply the procedural vehicle for asking [the judge] to decide the case on the basis of the administrative record." *El Paso ISD v. Richard R.,* 567 F. Supp. 2d 918, 927 (W.D. Tex. 2008); *Wood v. Katy Indep. Sch. Dist.*, 163 F. Supp. 3d at 402–403. Consequently, the typical summary judgment legal standards do not apply in reviewing the administra-

tive record in an IDEA case; for instance, the existence of a dispute of material fact will not defeat the motion, and the shifting burdens of proof do not apply. *El Paso ISD v. Richard R.,* 567 F. Supp. 2d at 927; *Wood v. Katy Indep. Sch. Dist.*, 163 F. Supp. 3d at 402–403. Instead, even though the appellate vehicle is titled a "Motion for Summary Judgment", the district court's analysis follows the appropriate appellate standard of review, that is, *de novo* review of the administrative record, while giving due weight to Hearing Officer's Decision, to reach an independent decision based upon a preponderance of the evidence. *Id.*; *see* 20 U.S.C. § 1415(i)(2)(C).

### B.  Consideration of Additional Evidence

In an administrative appeal under the IDEA, district courts "shall hear additional evidence at a party's request." 20 U.S.C. § 1415(i)(2)(C). Accordingly, a party who seeks to present evidence outside of the administrative record typically files a motion to submit this evidence. Because the district court is positioned as an appellate court, admission of additional evidence is limited, although within the district court's discretion. *Marc V. v. N. E. Indep. Sch. Dist.*, 455 F. Supp.2d 577, 588 (W.D. Tex. 2006), aff'd sub nom. *Marc V. ex rel. Eugene V. v. North East Indep. Sch. Dist.*, 242 Fed. App'x. 271 (5th Cir. 2007). This limited discretion shall be guided by the need to protect the administrative hearing as the primary forum to resolve disputes over a student's rights under the IDEA and to avoid turning the administrative hearing into a "mere dress rehearsal," followed by an "unrestricted trial *de novo*" in the district court. *M.V. b/n/f/ J.C. v. Conroe Indep. Sch. Dist.*, No. H-18-401, 2018 WL 4564948, *4 (S.D. Tex. Sept. 24, 2018); *Marc V. v. North East Indep. Sch. Dist.*, 455 F. Supp. 2d at 597.

The Fifth Circuit has not specifically addressed the scope of the district court's discretionary allowance of additional evidence upon an appeal from the IDEA administrative proceeding; however, most district courts in the Fifth Circuit follow the majority of other circuits

and allow additional evidence only when needed to: (1) cure gaps in the administrative transcript owing to mechanical failure; (2) allow testimony from witnesses unavailable in the administrative hearing; (3) cure an improper exclusion of evidence by the agency; or (4) allow evidence concerning relevant events occurring subsequent to the administrative hearing. *M.V. b/n/f/ J.C. v. Conroe Indep. Sch. Dist.*, 2018 WL 4564948, at *4; *See, e.g.*, *D.A. v. Houston Indep. Sch. Dist.*, 716 F. Supp. 2d 603, 616 (S.D. Tex. 2009), aff'd sub nom. *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450 (5th Cir. 2010); *Marc V. v. North East Indep. Sch. Dist.*, 455 F. Supp. 2d at 588; *S.H. v. Plano Indep. Sch. Dist.*, No. 08-cv-96, 2009 WL 500180 (E.D. Tex. Feb. 27, 2009); *Burks v. Boglusa City Sch. Bd.*, No. 98-cv-1333, 1999 WL 627398 (E.D. La. Aug. 13, 1999). Under this majority rule, "[i]n the absence of special circumstances, courts should ordinarily exercise [their] discretion in favor of excluding the belatedly offered evidence." *Marc V. v. North East Indep. Sch. Dist.*, 455 F. Supp. 2d at 588; *M.V. b/n/f/ J.C. v. Conroe Indep. Sch. Dist.*, 2018 WL 4564948, at *4. Additional evidence is not admissible if it is cumulative, irrelevant, untimely, or if it bolsters existing evidence. *Marc V. v. North East Indep. Sch. Dist.*, 455 F. Supp. 2d at 588. Therefore, courts should refuse to admit additional evidence that was available to the requesting party at the time of the administrative hearing and should limit or disallow testimony for witnesses who did testify, or who could have testified, in the administrative hearing. *Id.*; *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 716 F. Supp. 2d at 617.

### 1. Additional Evidence: Expert Reports

#### a) Question of Submission of Expert Reports

As evidentiary support for their competing Motions for Summary Judgment the parties submit Expert Reports that were not presented to the Hearing Officer. As additional evidence,

the C.B. Plaintiffs submit the IEE completed by Dr. Laura Eskridge as ordered by the Hearing Officer. *ECF Nos. 27,47*. The C.B. Plaintiffs also designate Dr. Eskridge as an expert witness on C.B.'s eligibility for special education services and submit the Expert Report of Roy Atwood as an expert witness on attorneys' fees. *ECF No. 28, exh. 27, App. 235-238.* NEISD submits the Expert Report of Dr. Brian Kelly, its designated counter-expert on C.B.'s eligibility for special education services, and of Jose Martin, its expert witness on attorneys' fees. *ECF Nos. 25, 26, 47*. Finally, the C.B. Plaintiffs submit an Expert Report by Dr. Janette Hahn, a rebuttal expert designated to contest various opinions in Dr. Kelly's report. *ECF Nos. 27, 47*.

The parties did not file a motion requesting the Court accept this additional evidence and explaining the necessity of the additional Expert Reports. However, the parties did engage in significant briefing and argument before Magistrate Judge Chestney on each party's Motions to Exclude the Expert Reports of the other party's named experts. Judge Chestney provided thorough and extensive review of these Motions to Exclude and ultimately denied all motions. *ECF No. 47.*

Based upon this procedural presentation, this Court concludes the parties did impliedly move to admit the additional evidence consisting of the Expert Reports of all designated expert witnesses, and Judge Chestney allowed the submission of Dr. Eskridge's IEE and these Expert Reports by denying all Motions to Exclude. However, as cautioned by Judge Chestney, submission of these reports does not necessarily guarantee this Court will consider this additional evidence. *See ECF No. 47.*

**b) Consideration of Expert Reports**

**1) Subject of C.B.'s Current Eligibility for Special Education Services**

At the direction of the Hearing Officer as remedy for NEISD's determined failure to identify C.B. for evaluation, Dr. Eskridge evaluated C.B. and composed an IEE dated April 20, 2021. *ECF No. 21-3; ECF No. 28, exh. 1, pp. 1-38.* As part of this appellate litigation, the C.B. Plaintiffs presented this IEE and designated Dr. Eskridge and Dr. Hahn as expert witnesses on the subject of C.B.'s eligibility for special education services after the administrative proceeding. Additionally, and in response to Dr. Eskridge's IEE, NEISD designated Dr. Kelly as its expert witness on the subject of C.B.'s eligibility for special education services after the administrative hearing.

This Court's review on this administrative appeal is limited to issues, evidence, and argument presented in the administrative complaint and the administrative record supporting the Hearing Officer's findings and conclusions. *See* 20 U.S.C. § 1415(i)(2). Consequently, this appeal cannot encompass any issues or factual disputes arising after conclusion of the administrative proceeding, even if the issues are related to, or are similar to, those presented previously. *See id.* Although the issue of C.B.'s eligibility for special education services was presented to the Hearing Officer, this appeal only pertains to the administrative record before the Hearing Officer and determination whether that record presents a preponderance of the evidence of C.B.'s eligibility for special education services at that time. *See id.*

For this reason, the issue of C.B.'s current eligibility for special education services is not properly before the Court. In the same respect, any debate or disagreement with Dr. Eskridge's IEE and the ARD Committee's determinations made after the IEE, which occurred after the Hearing Officer's ruling, is not properly before this Court. The proper remedial avenue for challenge to NEISD's conclusions with regard to C.B.'s current eligibility for special education is to proceed, again, through the administrative process allowed under the IDEA. Therefore, Dr.

Eskridge's IEE and both party's Expert Reports pertaining to C.B.'s eligibility for special educa-tion services after the administrative proceeding are irrelevant to the issues before this Court on this administrative appeal. Consequently, this Court will not consider the IEE completed by Dr. Eskridge on April 20, 2021, or the Expert Reports on this subject.

To the extent the parties may contend these materials also pertain to C.B.'s eligibility for special education services at the time of the administrative proceeding, the Court will refrain from consideration of this evidence because it was available to be presented to the Hearing Of-ficer, but was not. *See Marc V. v. North East Indep. Sch. Dist.*, 455 F. Supp. 2d at 588; *M.V. b/n/f/ J.C. v. Conroe Indep. Sch. Dist.*, 2018 WL 4564948, at *4. In accord with the majority view pertaining to the Court's consideration of additional evidence, this Court will not review the IEE and the Expert Reports to avoid making the administrative hearing into a "mere dress rehearsal," followed by an "unrestricted trial *de novo*" in the district court. *See Marc V. v. North East Indep. Sch. Dist.*, 455 F. Supp. 2d at 597.

Finally, to the extent this additional evidence may support the Motions for Summary Judgment on the ADA and Section 504 causes of action and constitutes relevant evidence, the Court will consider it in the event such evidence or analysis of these causes of action is neces-sary.

### 2)  Subject of Attorney Fees

The parties submit Expert Reports pertaining to the C.B. Plaintiffs' request for attorneys' fees incurred during the administrative proceeding and this appeal. This evidence pertains to relevant events occurring during and after the administrative hearing and provides information relevant to the scope of this Court's appellate review. For this reason, this Court will consider this additional evidence of Expert Reports pertaining to attorneys' fees in the event this analysis

is necessary.

> **2. Additional Evidence: Consideration of Miscellaneous and Discovery Evidence**

The parties also support their Motions for Summary Judgment with additional evidence not reviewed by the Hearing Officer, consisting primarily of answers to discovery. To the extent this evidence pertains to the issue of C.B.'s eligibility for special education services, either at the time of the administrative proceeding or after, this Court will not consider it for the same reasons the Court will not consider the Expert Reports. To the extent this evidence may support the Motions for Summary Judgment on the ADA and Section 504 causes of action and constitutes evidence concerning relevant events, the Court will consider it in the event such analysis of these causes of action is necessary.

> ### C.  Substantive Analysis of Administrative Appeal

As stated, construing the Complaint and the C.B. Plaintiffs' Motion for Partial Summary Judgment liberally, the C.B. Plaintiffs appeal the Hearing Officer's Decision finding the C.B. Plaintiffs did not satisfy their burden of proof to present a preponderance of the evidence that C.B. was eligible for special education services at that time. Thereby, the Hearing Officer concluded the C.B. Plaintiffs did not satisfy their burden to show NEISD failed to provide C.B. with a FAPE[2].

NEISD appeals the Hearing Officer's determination that it failed its Child Find obligation and should have identified C.B. as a student in need of evaluation for special education services

---

[2]  The C.B. Plaintiffs identify this cause of action as an omission of NEISD's Child Find obligation. However, the Hearing Officer and this Court identify the C.B. Plaintiffs' allegations pertaining to NEISD's failure to identify C.B.'s need for evaluation for special education services as the Child Find obligation, and NEISD's failure to designate C.B. as eligible for special education services as its FAPE obligation. For clarity of the two independent obligations and causes of action, this Court will designate the two causes of action in this way even though the C.B. Plaintiffs use the Child Find vernacular for both obligations.

by December 2019. NEISD contends the Hearing Officer erred because it never had reason to suspect C.B. should be evaluated for eligibility for special education services because she was designated as a gifted and talented student and achieved high academic performance throughout the time at issue. Further, NEISD contends its Child Find obligation to C.B. ceased when she withdrew from school and entered private placement out of state.

Based upon the C.B. Plaintiffs' appeal and NEISD's counterclaim/appeal, NEISD's challenge to the Hearing Officer's Child Find determination is a predicate to the C.B. Plaintiffs' appeal of the Hearing Officer's FAPS determination. Therefore, the Court will address NEISD's appeal of the Hearing Officer's Child Find determination first, and then proceed to the C.B. Plaintiffs' appeal of the Hearing Officer's FAPE determination, if necessary.

### 1. Child Find Obligation (NEISD Appeal)

The Child Find provision of the IDEA requires a school district to identify all students who may need evaluation for special education and related services. 20 U.S.C. § 1412(a)(3)(A). This obligation extends to students who are suspected of having a disability, even if not yet diagnosed and even if the student advances from grade to grade. *Id.*; 34 C.F.R. § 300.111. The school district's Child Find duty is triggered when it has reason to suspect a student has a disability coupled with reason to suspect special education services may be needed to address that disability. *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d. at 950. "Once the suspicions arise, the school district 'must evaluate the student within a reasonable time after school officials have notice of behavior likely to indicate a disability.'" *Id.* Determining whether a Child Find violation occurred is a fact-intensive inquiry. *Krawitz by Parker v. Galveston Indep. Sch. Dist.*, 900 F.3d 673, 676 (5th Cir. 2018). Consequently, courts use a two-part inquiry to determine whether

a school district complied with its Child Find duty. *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d. at 950. First, courts determine whether the school district had reason to suspect the student may have a disability. *Id*. If so, courts determine whether the school district evaluated the student within a reasonable amount of time. *Id*.

### a) Whether NEISD Had Reason to Suspect

The administrative record reveals, and the parties do not dispute, the C.B. Plaintiffs reported C.B.'s experiences of increased anxiety to her academic counselor in April 2019. *ECF No. 21-3; ECF No. 28, exh. 3, pp. 4-5*.[3] At that time, the counselor gave C.B. a "yellow pass" to allow her to leave class as needed when her anxiety became unmanageable. *Id*. During the summer following her Freshman year, C.B. exhibited self-injurious behavior. *Id*. at p. 5. While this information was not revealed to NEISD at the time, shortly after school began in August 2019, C.B. reported to her parents self-injurious behavior and suicidal ideation, and her parents immediately placed her in outpatient treatment at Clarity, where she received daily therapy treatment and returned home at night. *Id*. at pp. 5-7. The C.B. Plaintiffs informed C.B.'s school counselor of this placement and C.B.'s parents worked with the counselor to collect schoolwork and adjust her workload with her teachers. *Id*.

C.B. returned to school in September 2019, at which time NEISD notified C.B.'s parents that she was failing Pre-AP Algebra, something out of line with her high academic performance and proficiencies. *Id*. at p. 7. Shortly thereafter, in November 2019, the C.B. Plaintiffs, in collaboration with C.B.'s therapists, determined C.B. needed a higher level of care to address anxiety

---

[3]  For ease of access, the Court will cite to the Hearing Officer's Decision as support for facts that are not disputed. The Hearing Officer's Decision contains specific cites to the administrative record.

and depression. *Id*. at pp. 8-11. C.B. withdrew from school on December 2, 2019 and entered Pacific Quest. *Id*. at pp. 11-12.

After receipt of evidence and testimony, the Hearing Officer found NEISD failed to timely identify C.B. for an initial evaluation for special education eligibility. Specifically, the Hearing Officer found NEISD had enough information in December 2019 when C.B.'s parents alerted her counselor and teachers that C.B. was in a residential facility for an extended time for treatment of anxiety and depression. The Hearing Officer concluded C.B.'s counselor was incorrect in presuming C.B.'s high academic achievement made her ineligible for special education services. The Hearing Officer concluded NEISD did not timely evaluate C.B.  *Id*. at pp. 25-26.

Giving the Hearing Officer's findings and conclusions due weight, the Court conducted an independent review of the administrative record. The Court finds these undisputed facts present a preponderance of the evidence that by December 2019, NEISD had reason to suspect C.B. may have a disability and should be evaluated for eligibility for special education services. While NEISD had knowledge of C.B.'s ADHD and anxiety prior to December 2019, the holistic view and culmination of information did not present reason to suspect a need for evaluation. However, in December 2019, NEISD's knowledge of C.B.'s ADHD, increasing anxiety and depression which required outpatient treatment for an extended time, and her eventual withdrawal from school to attend a full-time treatment facility presented sufficient reason to suspect C.B. may have a disability and should be evaluated. *See El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d. at 950.

NEISD contends any failure to suspect C.B. should be evaluated is excused by evidence of her superior intelligence and high academic achievement and performance. Because C.B. always possessed superior intelligence and always maintained high academic performance, even

with ADHD, her increased anxiety, and her extended absence due to treatment, NEISD contends it did not have reason to suspect she needed evaluation for special education services.

The Court finds no merit or support for this contention. The Regulations supporting the IDEA specifically require a school district provide a FAPE tailored to a child's unique and independent needs. These Child Find and FAPE obligations are not relieved or obviated by a student's high intelligence or high academic performance. Likewise, the IDEA does not limit a school district's Child Find or FAPE obligations to only those students with demonstrated learning gaps or deficiencies. The Court recognizes the Regulations do not specifically state a school district's obligations under the IDEA extend to students with prodigious intelligence and high academic performance; however, the Regulations do specifically extend a school district's Child Find and FAPE obligations to "students who are suspected of having a disability, even if not yet diagnosed and even if the student advances from grade to grade." 34 C.F.R. § 300.111(a).

Of particular importance, the more accurate barometer to respond to a student's unique needs is to determine whether the student is experiencing academic decline or academic difficulties unusual for that student. *See e.g. Krawietz ex rel. Parker v. Galveston Indep. Sch. Dist.*, 900 F.3d 673, 677 (5th Cir. 2018) (student's academic decline, hospitalization, and incidents of theft were indications of a need for evaluation for special education services); *D.C. v. Klein Indep. Sch. Dist.*, 860 Fed. App'x. 894, 901 (5th Cir. 2021). The school district must not focus solely upon the student's academic performance, but upon a holistic view of the student's behavior, academic performance, and other indications. *Krawietz ex rel. Parker v. Galveston Indep. Sch. Dist.*, 900 F.3d at 677; *D.C. v. Klein Indep. Sch. Dist.*, 860 Fed. App'x. at 901. Finally, the regulations implementing the IDEA enumerate and define thirteen disability categories under which a student may qualify for special education services. 34 C.F.R. § 300.8. These thirteen categories

include ADHD, Emotional Disturbance and Other Health Impairment, conditions known to NEISD and of which it should have reasonably suspected C.B. possessed, even in light of her academic performance and achievement. These named disabilities are not limited to students with learning gaps or deficiencies. *See* 34 C.F.R. § 300.8.

For these reasons, NEISD's argument that it did not have reason to suspect C.B. should be evaluated in December 2019 must fail. NEISD had knowledge of C.B.'s ADHD, numerous absences due to outpatient treatment to address anxiety and depression, resulting academic decline, and eventual withdrawal to enter an inpatient treatment program. These conditions persisted over an extended time. This combined, holistic perspective was sufficient to provide reason to suspect C.B. should be evaluated for eligibility for special education services.

Finally, NEISD contends that even if it had reason to believe C.B. should be evaluated in December 2019, its Child Find obligation to evaluate her terminated when C.B. withdrew from school to attend an out of state institution.

The IDEA provides that "[a]ll children with disabilities residing in the State ... who are in need of special education and related services, [must be] identified, located, and evaluated...." 20 U.S.C. § 1414(a)(1)(B); *see D.C. v. Abramson,* 493 F.Supp.2d 80, 85-86 (D.D.C. 2007). These Child Find obligations apply regardless whether a student currently attends a public school, a private school, or is home-schooled. *See* 20 U.S.C. § 1412(a)(3)(A); *Heather v. Houston Indep. Sch. Dist.*, No. CV H-17-3579, 2021 WL 1216883, at *5 (S.D. Tex. Mar. 9, 2021), report and recommendation adopted sub nom. *Heather B. v. Houston Indep. Sch. Dist*., 2021 WL 1215848 (S.D. Tex. Mar. 31, 2021); *Bellflower Unified Sch. Dist. v. Lua*, 832 F.App'x 493, 495–96 (9th Cir. 2020); *D.C. v. Abramson,* 493 F. Supp.2d at 85-86. The Fifth Circuit does not provide specific guidance on this issue. However, this Court finds persuasive analysis on this specific point

by courts in other jurisdictions. In a situation in which a student who is identified as needing spe-
cial-education assessment, or should have been identified, is then enrolled in a school out of the
district, the school district's ongoing Child Find responsibilities are based in where the student
resides, rather than where the student is currently enrolled in school. 34 C.F.R. § 300.131;
*Abramson*, 493 F. Supp. 2d at 85; *S.B. v. San Mateo Foster City Sch. Dist.*, No. 16-CV-01789-
EDL, 2017 WL 4856868, at *16–17 (N.D. Cal. Apr. 11, 2017), aff'd sub nom. *Burnett v. San
Mateo Foster City Sch. Dist.*, 739 Fed. App'x. 870 (9th Cir. 2018). In particular, the Regulations
implementing the IDEA specifically contemplate a school district must evaluate a student resid-
ing in its district for purposes of making a FAPE available to her, even if she is enrolled in a pri-
vate school in another district. *Heather v. Houston Indep. Sch. Dist.*, 2021 WL 1216883, at *5;
*Bellflower Unified Sch. Dist. v. Lua*, 832 F. App'x at 495–96 (Child Find duties extended after
parent informed district of residence that student was at a private school outside the state); *see
also Abramson*, 493 F. Supp. 2d at 85 (Child Find duty extends to evaluation of student attending
a residential therapeutic private school in Connecticut when student maintained D.C. residency);
*San Mateo Foster City Sch. Dist.*, 2017 WL 4856868, at *16–17 (Child Find responsibility ex-
tended to student who should have been identified for special-education assessment after student
transferred to school in another district).

Here, NEISD did not identify C.B. for the need for evaluation before she enrolled in La
Europa Academy in December 2019; however, NEISD should have identified her at this time.
Consequently, its Child Find responsibility to evaluate C.B. for special education eligibility did
not terminate when she began school at La Europa.

Consequently, upon review of the administrative record and giving due weight to the
Hearing Officer's Decision, a preponderance of the evidence reveals NEISD should have identi-

fied C.B. as a student in need of evaluation for special education services by December 2019, and thereby was obligated to evaluate her within a reasonable time.

### b)  Whether NEISD Evaluated C.B. Within a Reasonable Time

The record reflects NEISD did not evaluate C.B. for eligibility for special education services until ordered to do so by the Hearing Officer. The Court finds this delay was not reasonable.

### Conclusion

Giving the Hearing Officer's findings and conclusions due weight, the Court conducted an independent review of the administrative record, the Court finds a preponderance of the evidence shows NEISD should have identified C.B. for evaluation for eligibility for special education by December 2019, and it did not conduct an evaluation within a reasonable time. Consequently, NEISD violated its Child Find obligation under the IDEA. For this reason, the Hearing Officer's finding in this regard was correct, and is AFFIRMED by denial of NEISD's Motion for Summary Judgment on this appellate issue.

### 2.  FAPE Obligation (The C.B. Plaintiffs' Appeal)

Having determined NEISD violated its Child Find obligation, the Hearing Officer next turned to determination whether C.B. was entitled to receive special education services. This Court, likewise, will review the administrative record to determine whether the C.B. Plaintiffs met their burden to show, by a preponderance of the evidence, that C.B. qualified for special education services from the time she should have been evaluated, i.e. December 2019, to the time of the administrative proceeding. Argument on this issue is presented through the C.B. Plaintiffs' Motion for Partial Summary Judgment. As in the administrative proceeding, the C.B. Plaintiffs

contend C.B.'s disabilities of Emotional Disturbance and Other Health Impairment present a need for special education services.

A central goal of the IDEA is to ensure children with disabilities receive a FAPE, which may include, if needed, "special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living.'" *Houston Indep. Sch. Dist. v. V.P. ex rel. Juan P.,* 582 F.3d 576, 583 (5th Cir. 2009); 20 U.S.C. § 1400(d)(1)(A); 20 U.S.C. § 1412(a)(1). A FAPE which involves special education services must be "specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction." *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F. by Barry F.*, 118 F.3d 245, 247-248 (5th Cir. 1997); *see* 20 U.S.C. § 1401(9), 1414(d). Special education is "specially designed instruction" that adapts "the content, methodology, or delivery of instruction" to address the "unique needs of a child with a disability" and to ensure access to "the general curriculum, so that the child can meet the educational standards ... that apply to all children" in that jurisdiction. 34 C.F.R. § 300.39(a)(1), (b)(3). However, the school district is not required to "provide its disabled students with the best possible education, nor one that will maximize the student's educational potential." *William V. as next friend of W.V. v. Copperas Cove Indep. Sch. Dist.*, 826 Fed. App'x. 374, 378 (5th Cir. 2020), cert. denied 142 S. Ct. 72 (2021).

After a school district identifies a student and conducts an IEE (its Child Find duty), determination whether a student should be given special education services (its FAPE duty) is a two-part inquiry. To qualify for special education services a student must both: (1) have a qualifying disability and (2) "by reason thereof, need [ ] special education and related services." 20 U.S.C. § 1401(3)(A). The fact that a student has a disability does not automatically qualify the student for special education services. Determination of both parts of the two-part inquiry must

include review of an IEE[4] which draws upon information from aptitude and achievement tests, consultation with the student's parents and teachers, and consideration of the student's academic level, physical condition, cultural background, behavior, adaptive behavior, and social progress. 20 U.S.C.A. § 1414(a)(1); 34 C.F.R. §§ 300.304(b),(c), 300.306(c)(1); *Alvin lndep. Sch. Dist. v. A.D. ex rel. Patricia F.,* 503 F. 3d 378, 382-384 (5th Cir. 2007); *J. L. v. Clear Creek Indep. Sch. Dist.*, No. CV H-15-1373, 2016 WL 4704919, at *23-28 (S.D. Tex. Aug. 16, 2016), report and recommendation adopted sub nom., 2016 WL 4702446 (S.D. Tex. Sept. 7, 2016), aff'd sub nom. 695 Fed. App'x. 733 (5th Cir. 2017), as revised (July 31, 2017).

For determination of the first prong, the regulations implementing the IDEA enumerate and define thirteen disability categories under which a student may qualify for special education services. Particular to the facts in this case, these thirteen categories include Emotional Disturbance and Other Health Impairment. *See* 34 C.F.R. § 300.8. Emotional Disturbance (ED) is defined as a condition with characteristics exhibited "over a long period of time and to a marked degree that adversely affects a child's educational performance." 34 C.F.R. § 300.8(c)(4)(i). The relevant characteristics are:

> (A) An inability to learn that cannot be explained by intellectual, sensory, or health factors.
> (B) An inability to build or maintain satisfactory interpersonal relationships with peers and teachers.
> (C) Inappropriate types of behavior or feelings under normal circumstances.
> (D) A general pervasive mood of unhappiness or depression.
> (E) A tendency to develop physical symptoms or fears associated with personal or school problems.

34 C.F.R. § 300.8(c)(4)(i).

A student is eligible under Other Health Impairment (OHI) if she has "limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli" due to chronic or

---

4  Some parties and caselaw refer to an IEE as a "full and independent evaluation" or FIE.

acute health problems including ADHD "that results in limited alertness with respect to the educational environment" and "[a]dversely affects a child's educational performance." 34 C.F.R. § 300.8(c)(9). Only if a school district finds a student has an eligible disability, must it, then, determine whether the student needs special education services due to the disability. *See* 20 U.S.C. § 1401(3)(A).

### a) Element One: Whether C.B. Possessed a Qualifying Disability Category

The Hearing Officer found the evidence presented established C.B. had a qualifying disability of ADHD. *ECF No. 21-3, pp. 28-30*. On appeal, the parties do not appear to dispute whether C.B. possessed a disability category under which she may qualify for special education services. In any event, review of the administrative record reveals a preponderance of the evidence showing C.B. possessed the qualifying disability categories of Emotional Disturbance and Other Health Impairment based upon ADHD which adversely impacted her education performance. Based upon this preponderance of the evidence, the C.B. Plaintiffs satisfied the first element of their burden of Proof.

### b) Element Two: Whether C.B. Needed Special Education Because of The Qualifying Disability Category

To satisfy their burden of proof to show C.B. had a qualifying disability of Emotional Disturbance and Other Health Impairment which presented a need for special education services, the C.B. Plaintiffs presented testimony from C.B.'s parents and the independent psychological evaluation ("the Evaluation") conducted by Dr. Kasenchak after C.B. entered Pacific Quest. *See ECF No. 21-3, pp. 1-38 (HO Decision), 392-411 (the Evaluation).*

In their testimonies, C.B.'s parents described her educational history, including her treatment for ADHD and other conditions, as well as her psychological treatment. C.B.'s parents expressed opinion that C.B. required special education services not to accommodate any academic deficiencies, but to accommodate her behavioral conditions of anxiety and depression, which includes continued treatment at a private residential facility. C.B.'s parents expressed the emergent necessity for residential treatment at the time C.B. entered Clarity and Pacific Quest to protect her from self-harm. Finally, C.B.'s parents described at length her academic difficulties, difficulty in getting to school, and her falling grades at the time C.B. entered residential treatment. *ECF No. 21-16, pp. 193-238, 318-345, 492-496, 500-520.*

The Evaluation reports evaluation dates of December 18 and 20, 2019, and states its purpose as "develop a better understanding of [C.B.'s] current cognitive and emotional functioning, aid in diagnostic clarification, and generate recommendations for ongoing treatment and schooling" at the time of the assessment. *ECF No. 21-3, pp. 392-93.* The Evaluation specifically limits its presentation and recommendations to C.B.'s "functioning at a specific point in time. As the clinical picture changes, the broad formulation and recommendations in this report may need to be revised." *Id. at p. 393.*

While the Evaluation is not an IEE, or "full and individual evaluation", conducted for the purpose of determination whether C.B. was eligible for special education services, it was conducted in December 2019, and is the only assessment conducted at the time NEISD should have identified C.B. as a student needing evaluation for special education services. It was also the only assessment submitted as evidence to support the C.B. Plaintiffs' burden of proof to show C.B. had a disability that required she receive special education services.

To prepare the Evaluation, Dr. Kasenchak administered a variety of assessments, which included the Wechsler Intelligence Scale for Children-Fifth Edition; the Woodcock Johnson Test of Achievement-Fourth Edition; the BASC-3, Adolescent Parent Report; Rorschach Inkblot Test; Minnesota Multiphasic Personality Inventory; Million Adolescent Clinical Inventory; Teenage Sentence Completion Exercise; and Substance Abuse Subtle Screening Inventory. *ECF No. 21-3, p. 392.* Dr. Kasenchak included C.B.'s academic history based on C.B.'s and her parents' reports but did not include independent review of C.B.'s academic records or discussion with her teachers or school officials. *Id. at pp. 395-400.* Based upon C.B.'s report, Dr. Kasenchak states C.B. "was able to maintain all As until the spring of last year, when she began to struggle with attendance and failed most of her classes....Currently, [C.B.] stated that she generally earns As in her elective classes and Bs and Cs in her academic coursework." *Id. at 395.*

Based upon the assessments administered, Dr. Kasenchak concluded all of C.B.'s "academic skills, barring her score on Math Fluency, were measured to be Average or above. Though her Math Fluency score fell into the Low Average range, this alone is not sufficient to diagnose a specific learning disability." *Id. at p. 400.* Further, Dr. Kasenchak concluded "[t]he results of the current cognitive testing placed [C.B.'s] overall intelligence abilities in the Superior range, with a relative weakness in processing speed. *Id. at p. 407.*

In conclusion, Dr. Kasenchak diagnosed C.B. with Persistent Depressive Disorder with major depressive episodes, Panic Disorder, Other Specified Obsessive Compulsive and Related Disorder, Persistent Vocal Tic Disorder, and ADHD. *Id. at pp. 408-409.* The Evaluation recommended continued residential placement and therapeutic school setting to build on recent treatment gains and build skills and develop more adaptive coping strategies as

C.B. is reintroduced to an academic environment. *Id. at pp. 409-411*. C.B. would benefit from working with a Learning Specialist, Educational Therapist, or Executive Functioning Coach around organizational skills related to ADHD, structure, and motivation to complete schoolwork. *Id*. The Evaluation recommended an academic environment that has a low teacher to student ratio to give C.B. more individualized attention and create accountability. *Id.*

Upon considering the Evaluation, the Hearing Officer concluded Dr. Kasenchak's conclusions regarding C.B.'s functioning at school were not accurate. *ECF No. 21-3, pp. 32, 34*. To the contrary, the Hearing Officer found the evidence showed C.B. did not fail most of her classes, as stated by Dr. Kasenchak, and Dr. Kasenchak did not have an accurate understanding of C.B.'s attendance history when she began to experience increasing difficulties at school in the spring of 2019. *Id. at pp. 32-33*. Most importantly, the Hearing Officer concluded the Evaluation was not reliable or accurate because Dr. Kasenchak did not request or review C.B.'s education records from NEISD, did not review C.B.'s educational records from Pacific Quest, and did not solicit information or other feedback from C.B.'s educators at NEISD or at Pacific Quest. *Id*. Further, Dr. Kasenchak did not review state assessment information because she did not consider C.B.'s academic proficiency relevant given the purpose of the Evaluation. *Id*. Instead, Dr. Kasenchak assessed C.B.'s adaptive functioning by soliciting parent responses, only. For these reasons, the Hearing Officer concluded, "[w]hile no particular assessment instrument is required, a full picture of [C.B.'s] adaptive functioning at school does not emerge." *Id. at p. 34*. Because the Hearing Officer found the Evaluation did not provide an accurate assessment for the purpose of determination whether

C.B. needed special education services based upon identified disabilities, she concluded the C.B. Plaintiffs failed to satisfy their burden of proof on this issue. *ECF No. 21-3, p. 34.*

Independent review of the administrative record reveals the Evaluation and C.B.'s parents' testimony to be the evidence presented by the C.B. Plaintiffs to satisfy their burden of proof on the issue whether C.B. had a qualifying disability, and by reason thereof, required special education. Review of this evidence does not demonstrate a preponderance of the evidence to satisfy the C.B. Plaintiffs' burden on this issue.

Assuming, without deciding C.B. had a disability of Emotional Disturbance or Other Health Impairment to satisfy the first prong of the FAPE determination, the fact that C.B. had disability at the relevant time does not automatically qualify her for special education services. Determination of the second prong must take a holistic view of C.B.'s unique needs and assessment drawing upon information which includes C.B.'s aptitude and achievement tests, consultation with the C.B.'s parents and teachers, and should consider C.B.'s academic level, physical condition, cultural background, behavior, adaptive behavior, and social progress. *See* 34 C.F.R. § 300.8(c); *see also Alvin lndep. Sch. Dist. v. A.D.,* 503 F. 3d at 382-384; *J. L. v. Clear Creek Indep. Sch. Dist.*, 2016 WL 4704919, at *23 (S.D. Tex. Aug. 16, 2016). The Evaluation does not draw upon all of this information and is limited in scope, and therefore, cannot provide the full information necessary to determine whether C.B.'s presumed disabilities of Emotional Disturbance and Other Health Impairment predicated a need for special education. Particularly, the Evaluation does not provide any assessment of C.B.'s academic functioning in an educational setting, does not provide objective assessment of C.B.'s historic or current academic performance, and concluded that diagnosis of a specific learning disability was not possible based upon the assessments administered. *ECF No. 21-3, p. 400*.

While the Court recognizes the Evaluation was not conducted for the purpose of making determination whether C.B. had a disability which required she receive special education services, other than C.B.'s parents' testimony, this is the only evidence presented from which the Hearing Officer and this Court may make determination on this second prong. The Evaluation simply does not provide the information needed to make this determination. *See Alvin lndep. Sch. Dist. v. A.D.,* 503 F. 3d at 382-384.

The testimony of C.B.'s parents does provide some additional information; however, this testimony, alone, cannot support the C.B. Plaintiffs' burden of proof on this issue. Even in conjunction with the Evaluation, C.B.'s parents' testimony does not fill the gaps of information missing for the Hearing Officer or this Court to determine whether C.B. needed special education services because of a demonstrated disability.

The most compelling evidence presented during the administrative proceeding on this issue was that of C.B.'s teachers during the 2019-2020 school year, although this testimony is also given due weight given the little time the teachers observed C.B. before she withdrew. C.B.'s English teacher testified she did not observe C.B. have any panic attacks, C.B. was never disruptive in class, did not exhibit difficulty performing daily tasks in a safe and efficient manner, never had difficulty controlling her behavior and mood, or difficulty making friends, and she never observed any instances of self-harm. C.B.'s English teacher stated she did not notice any behavior to alert her that C.B. needed evaluation for special education. C.B. achieved high academic performance, although her grades started dropping due to C.B.'s failure to turn in work and prepare for tests. *ECF No. 21-16, pp. 354-382*.

C.B.'s Theatre teacher had more time to observe C.B. in the educational setting than her other teachers who testified, as she first met C.B. in 2018 before her Freshman year. C.B. was

enrolled in Theatre class during her 9th and 10th grade years. C.B.'s Theatre teacher school stated C.B. thrived in her class, as she was very interested and passionate about the subject. For these reasons, C.B. performed well academically. C.B. did not exhibit any panic attacks, trouble breathing, or physiological symptoms of anxiety, but instead exhibited excitement and strong interest in the class and in her assigned duties; C.B. was never disruptive in theatre, did not have problems performing daily tasks in a safe and efficient manner, did not have difficulty control-ling her behavior, and had many different types of friends in the theatre department. C.B.'s Thea-tre teacher stated she did not notice any behavior to alert her that C.B. needed evaluation for spe-cial education. *ECF No. 21-16, pp. 584-616.*

C.B.'s Pre-AP Algebra teacher observed that C.B. had a positive relationship with a peer in class and participated in group activities. C.B.'s Algebra teacher did report C.B. experienced a drop in her grades due to her failure to turn in work and missed exams and was required to work on completion of the credit protection after her extended absence; however, C.B. was completing her second nine weeks assignments. C.B.'s Algebra teacher testified C.B. did not exhibit any be-haviors or difficulties that would alert her that C.B. needed evaluation for special education. However, she became concerned about C.B. when C.B. withdrew to attend Clarity and began to have discussions with C.B.'s counselor about her concerns and the potential that C.B. be evaluat-ed for special education. *ECF No. 21-16, pp. 431-486.*

This evidence of testimony from C.B.'s teachers presents a more reliable perspective of C.B.'s academic proficiency at the relevant time of December 2019 and presents a picture of her ability to function in an educational setting at that time. Consequently, this evidence discredits that portion of Dr. Kasenchak's Evaluation speaking to C.B.'s academic performance and pre-sents a greater weight of evidence on this aspect of the issue of academic performance.

**Conclusion**

Giving the Hearing Officer's findings and conclusions due weight, the Court conducted an independent review of the administrative record, the Court finds the C.B. Plaintiffs did not satisfy their burden of proof to present a preponderance of the evidence showing C.B. needed special education services due to any disabilities. Consequently, the administrative record does not show NEISD denied C.B. a FAPE.

For these reasons, the Hearing Officer's finding in this regard is AFFIRMED. The C.B. Plaintiffs' Motion for Partial Summary Judgment on this appellate issue is DENIED.


## II.    SUMMARY JUDGMENT ON ADA AND SECTION 504 CAUSES OF ACTION

### A.  Factual Basis of Causes of Action

In the Complaint, the C.B. Plaintiffs assert causes of action for violation of Section II of the ADA and Section 504 of the Rehabilitation Act based upon the same grounds and acts supporting their IDEA cause of action: NEISD's failure to provide a free and appropriate public education by failing to timely designate C.B. for evaluation of eligibility for special education services and by failing to designate C.B. as eligible for special education. *ECF No. 1, pp. 21-22.* Specifically, in their Response to NEISD's Motion for Summary Judgment on these causes of action, C.B. states,

> NEISD intentionally discriminated against C.B. because it knowingly failed to timely evaluate and identify and qualify C.B. as an ADA/§504 student entitled to services to meet her mental health needs. This was gross misjudgment because it incorrectly relied upon her grades and gifted status, contrary to sound professional judgment. This occurred from at least 7th grade forward and certainly in the spring of 2019, throughout sophomore year (2019-2020), and junior year (2020-2021) when she was in mental health care and not able to obtain the usual benefits of attending Johnson High School.

*ECF No. 52, pp. 7-8.*

For these statutory violations, the C.B. Plaintiffs seek monetary damages for reimburse-ment of all costs for private placement, mileage reimbursement for transporting C.B. to therapy and counseling sessions, reimbursement for travel, gas, rental cars, parking, and airfare, and re-imbursement for cost of the Evaluation by Dr. Kasenchak. *ECF No. 1, pp. 21-24.*

### B.  Arguments

NEISD argues the C.B. Plaintiffs' causes of action under the ADA and § 504 must fail because they are based upon the same facts supporting the IDEA cause of action, and if the Court finds NEISD did not violate the IDEA, the same factual and legal issues would have to be reliti-gated to resolve the C.B. Plaintiffs' ADA and § 504 claims. NEISD contends the C.B. Plaintiffs' ADA and § 504 claims are precluded because the school district complied with its legal obliga-tions under the IDEA. Further, NEISD contends the C.B. Plaintiffs cannot show it committed any acts with intentional discrimination or gross misjudgment because there is no finding that C.B. has a disability, and because the facts do not support such a finding.

The C.B. Plaintiffs do not specifically address NEISD's contentions; however, construing their arguments liberally, the C.B. Plaintiffs present the same general contention that the Court should proceed to trial on these causes of action because the record shows NEISD's actions were intentional and showed gross misjudgment. The C.B. Plaintiffs argue C.B. is entitled to designa-tion as disabled and is eligible for special education designation. Therefore, NEISD's failure to act denied C.B. of a free and appropriate public education, "and this is discrimination." *See ECF No. 52, pp. 21, 24-25*.

### C.  Legal Standard: Asserting Causes of Action in Same Suit as IDEA Appeal

The IDEA requires states and local educational agencies to provide a FAPE to children with disabilities. *Houston Indep. Sch. Dist. v. V.P.,* 582 F.3d at 583; 20 U.S.C. § 1400(d)(1)(A);

20 U.S.C. §§1412(a)(1), 1414. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of ... his disability, be excluded from the participation, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Because the terms of the ADA and Section 504 are so similar, courts evaluate a plaintiff's claims under the statutes together. *D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010).

A plaintiff may assert claims under the ADA and § 504 in the same suit it appeals an administrative decision under the IDEA; however, to establish a claim for disability discrimination, in the education context, 'something more than a mere failure to provide the 'free appropriate education' required by [IDEA] must be shown,'" that is, the plaintiff must demonstrate intentional discrimination. *Id*. at 453-44; *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 990-93 (5th Cir. 2014); *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir. 1983). To demonstrate intentional disability discrimination predicated on a disagreement over a school district's compliance with IDEA, facts creating an inference of professional bad faith or gross misjudgment are necessary. *D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d at 454-455; *see also Bennet-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). A plaintiff's mere disagreement with the correctness of the educational services rendered to him does not state a claim for disability discrimination. *D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d at 454-455.

Accordingly, when an appeal is from a Hearing Officer's decision denying an IDEA claim, and additional federal claims under the ADA or Section 504 are raised on appeal to the

34

district court, the plaintiff must rely on facts independent of those that establish or support the IDEA violation to support these original causes of action. *Id.*; *M.V. b/n/f/ J.C. v. Conroe Indep. Sch. Dist.*, 2018 WL 4564948, *7. Otherwise, resolution of the IDEA appeal in favor of the school district necessarily precludes a plaintiff's claims under the ADA and Section 504 as redundant when those claims are based on the school district's alleged IDEA violations. *M.V. b/n/f/ J.C. v. Conroe Indep. Sch. Dist.*, 2018 WL 4564948, *7.

Consequently, when a plaintiff asserts original causes of action under the ADA and Section 504 in the same administrative appeal under the IDEA, the court should decide the IDEA claims first and, if it finds in favor of the school district, apply an issue-preclusion type analysis to bar re-litigation of the same facts and issues. *See Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 289–90 (5th Cir. 2005); *D.A. v. Hous. Indep. Sch. Dist.*, 716 F. Supp. 2d 603, 618 (S.D. Tex. 2009); *M.V. b/n/f/ J.C. v. Conroe Indep. Sch. Dist.*, 2018 WL 4564948, at *4. In this respect, the plaintiff has no cognizable claim under Section 504 or the ADA because the gravamen of their disagreement has already been determined in favor of the school district.

As the C.B. Plaintiffs admit, the gravamen of their Section 504 and ADA causes of action is that NEISD failed to timely identify C.B. for evaluation and failed to provide C.B. with special education and related services under the IDEA. This Court's determination of the alleged IDEA violations is two-fold. First, the Court determined NEISD did fail to timely identify C.B. for evaluation (Child Find). Second, the administrative record did not support a finding of C.B.'s eligibility for special education services (FAPE).

### D.  Child-Find Allegations

With regard to the Child Find allegation, the Court did determine NEISD failed to timely identify C.B. for evaluation. Consequently, the C.B. Plaintiffs may proceed on causes of action

under the ADA and Section 504 based upon this Child Find allegation. However, the causes of action must still be supported by independent factual allegation that NEISD officials acted with professional bad faith or gross misjudgment. *D.A.*, 629 F.3d at 453–55.

Review of the Complaint reveals the C.B. Plaintiffs do not allege NEISD acted with professional bad faith or gross misjudgment. The C.B. Plaintiffs do not allege any independent act of intentional discrimination other than the same facts it relies upon to support the alleged IDEA violation. In the Response to the Motion for Summary Judgement, which is not a pleading or competent evidence, the C.B. Plaintiffs contend NEISD's failure to act denied C.B. of a free and appropriate public education, "and this is discrimination." *ECF No. 52, pp. 24-25*. The C.B. Plaintiffs do not offer any other acts or omissions which constitute professional bad faith or gross misjudgment.

Because the C.B. Plaintiffs fail to allege facts creating an inference of professional bad faith or gross misjudgment, they fail to establish a viable cause of action under the ADA and Section 504. *See D.A.*, 629 F.3d at 454-455. The C.B. Plaintiffs disagreement with the educational services rendered, alone, cannot support a claim for disability discrimination under the ADA or Section 504. *See id.* Accordingly, NEISD's Motion for Summary Judgment on the ADA and Section 504 causes of action related to NEISD's Child Find obligation is granted.

### E.  FAPE Allegations

With regard to the FAPE determination, this Court found in favor of NEISD, that is, the Court determined the record did not reflect NEISD failed to provide C.B. with a FAPE by a preponderance of the evidence. Resolution of the FAPE claim in favor of NEISD precludes the C.B. Plaintiffs' redundant claims under the ADA and Section 504 because the supporting facts and allegations have already been analyzed and determined. For this reason, the C.B. Plaintiffs can-

not state a viable intentional discrimination claim under either statute based upon NEISD's al-leged failure to designate C.B. as eligible for special education services. *See D.A.*, 629 F.3d at 454-455; *Zamora v. Hays Consol. Indep. Sch. Dist.*, 2021 WL 2531011, at *12–13; *Ashley G. v. Copperas Cove Indep. Sch. Dist.*, No. 6:19-CV-00420-ADA, 2021 WL 1840910, at *1 (W.D. Tex. May 7, 2021).

Accordingly, summary judgment on C.B.'s causes of action asserting violation of the ADA and Section 504 based upon NEISD's alleged failure to provide C.B. a FAPE is warranted. For the reasons stated, NEISD's Motion for Summary Judgment on the ADA and Section 504 causes of action related to NEISD's FAPE obligation is granted.

## III.   ATTORNEYS' FEES FOR IDEA ADMINISTRATIVE APPEAL

NEISD contends the C.B. Plaintiffs are not entitled to attorneys' fees because C.B. is not a child with a disability under the IDEA to trigger qualification for recovery of attorney fees. NEISD also contends the C.B. Plaintiffs are not the "prevailing party" in the administrative pro-ceeding, and therefore, are not entitled to recover attorneys' fees. The C.B. Plaintiffs contend they are a prevailing party in the IDEA proceeding because the Hearing Officer found in their favor that NEISD failed to provide C.B. a FAPE by failing to timely evaluate her for eligibility for special education services.

NEISD presents an Expert Report on the legal issue whether the C.B. Plaintiffs were a prevailing party in the administrative proceeding and on the issue whether the attorneys' fees re-quested are reasonable. The C.B. Plaintiffs present a competing Expert Report. Because this ad-ditional evidence of the Expert Reports is relevant to an issue before the Court, the Court will

consider the additional evidence of these Expert Reports in its analysis whether the C.B. Plaintiffs are entitled to recover attorneys' fees under the IDEA.

Under the IDEA, the district court has discretion to award reasonable attorneys' fees "to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I); 34 C.F.R. § 300.517. The IDEA defines "child with a disability" as a child with one of an enumerated list of conditions and "who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A); *T.B. ex rel. Debbra B. v. Bryan Indep. Sch. Dist*., 628 F.3d 240, 243 (5th Cir. 2010). Pursuant to the plain language of the statute, recovery of attorneys' fees is only available in IDEA proceedings to a parent of a "child with a disability". *T.B. ex rel. Debbra B. v. Bryan Indep. Sch. Dist*., 628 F.3d 243-46. Thus, even if a child has one of the enumerated conditions listed in Section 1401(3)(A), the parent of a child not yet determined to be a "child with a disability" cannot recover attorneys' fees under the IDEA. *Id*. The plain language of the IDEA limits recovery of attorneys' fees to the parent of a child who, by reason of an enumerated condition, needs special education and related services. 20 U.S.C. § 1415(i)(3)(B)(i)(I); *T.B. ex rel. Debbra B. v. Bryan Indep. Sch. Dist*., 628 F.3d at 243-46.

Because C.B. has not yet been determined to be a "child with a disability," the C.B. Plaintiffs are not entitled to recovery of their attorneys' fees. *See id*. Consequently, the Court cannot exercise its discretion to determine whether the C.B. Plaintiffs should recover attorneys' fees under the IDEA. For this reason, the Court does not reach the issues whether the C.B. Plaintiffs were a prevailing party or what amount of attorneys' fees would be reasonable.

Consequently, the C.B. Plaintiffs' request for attorneys' fees is denied. To this extent, NEISD's Motion for Summary Judgment on this issue is granted.

**CONCLUSION**

This Court gave due weight to the Hearing Officer's Decision and reviewed the administrative record. Upon this *de novo* review, the Court finds NEISD failed to demonstrate by a preponderance of the evidence that it satisfied its Child Find obligation to C.B. Consequently, the Court **AFFIRMS** the Hearing Officer's Decision on this issue and **DENIES** NEISD's Motion for Summary Judgment on this issue. Upon this *de novo* review, the Court finds the C.B. Plaintiffs failed to demonstrate by a preponderance of the evidence that C.B. had a disability that presented a need for special education. Consequently, the Court **AFFIRMS** the Hearing Officer's Decision on this issue and **DENIES** the C.B. Plaintiffs' Motion for Partial Summary Judgment on this issue. Based upon these findings and conclusions, the Court **AFFIRMS** the Hearing Officer's Decision.

Finally, the Court **GRANTS** NEISD's Motion for Summary Judgment on the C.B. Plaintiffs' ADA and Section 504 causes of action, as well as its Motion for Summary Judgment on the C.B. Plaintiffs' request for attorneys' fees. Based upon these findings and conclusions, no appellate issues, causes of action, or counterclaims remain to be litigated. Therefore, the Clerk of Court is directed to **CLOSE THIS CASE**. Final Judgment will be entered by separate order.

It is so ORDERED.
SIGNED this 16th day of February, 2022.


_____
JASON  PULLIAM
UNITED STATES DISTRICT JUDGE